STATE of Missouri, Respondent,

v.

Charles INMAN, Appellant.

No. KCD 29777.

Missouri Court of Appeals, Western District.

Feb. 26, 1979.

E. Richard Webber, Memphis, for appellant.

John D. Ashcroft, Atty. Gen., Bruce E. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

SOMERVILLE, Presiding Judge.

Defendant was charged with receiving stolen property (Section 560.270, RSMo 1969). A Putnam County jury before whom he cast his lot found him guilty as charged and fixed his punishment at thirty days confinement in the county jail and payment of a fine in the amount of $350.00 (Section 560.161.1(2) and .2(2), RSMo 1969). Judgment and sentence were rendered and pronounced accordingly.

None of the three rulings of the trial court with which defendant takes issue on appeal need be set forth as the evidence was insufficient to make a submissible case. Defendant's incarceration and subjection to a fine for commission of a crime wholly unsustained by the evidence is legally intolerable, and as its inseparable companions are "manifest injustice" and "miscarriage of justice" a prime situation for sua sponte application of the "plain error" rule within the intendment of Rule 27.20(c) is presented. *State v. Goodwin*, 352 S.W.2d 614, 619 (Mo. banc 1962). See also *State v. Sockel*, 490 S.W.2d 336, 339 (Mo.App.1973).

*State v. Armstrong*, 555 S.W.2d 640, 642 (Mo.App.1977), citing *State v. Kelly*, 365 S.W.2d 602 (Mo.1963), spells out the essential elements, four in number, of the offense of receiving stolen property: "(1) *the property must be 'received in some way' from another person* ; (2) the property at the time of reception must be stolen property; (3) the receiver, at the time of reception, must have guilty knowledge that it is stolen property; and (4) the accused must have received the property with a fraudulent or criminal intent". (Emphasis added.) The first element makes eminent good sense. The general rule underlying it, "that one cannot at the same time be a principal in the larceny and in the legal sense a receiver of stolen property", was acknowledged in *State v. Honig*, 78 Mo. 249, 252–53 (1883), wherein the court observed by way of explanation that if one "is a principal actor in the theft—the *actual captor* of the property, it is illogical and contradictory to say he has received it from anoth-

er." (Emphasis added.) Obversely stated, a thief cannot receive stolen property from himself.

■ Insofar as the first element of the charged offense is concerned, a recitation of the germane facts is most noteworthy for what they fail to prove rather than for what they do prove. On or about August 7, 1975, a 1975 green Chevrolet pickup truck was stolen from the lot of Smith Chevrolet, Inc., in Bloomfield, Iowa. Shortly thereafter defendant purchased a wrecked 1974 Chevrolet pickup truck from a salvage yard in Fort Dodge, Iowa. Various parts of the wrecked vehicle were cannibalized, including a plate bearing its "vehicle identification number" (VIN), and utilized on the stolen 1975 green Chevrolet pickup for the obvious purpose of concealing its true identity. The end product was thereafter observed in defendant's possession in Putnam County, Missouri. Be that as it may, there is not one iota of evidence as to who stole the 1975 green Chevrolet pickup truck from the Smith Chevrolet, Inc., lot or how it ever came into defendant's possession. With the record in this posture there is no escape from the conclusion that evidence to support the first essential element of the offense of receiving stolen property was totally lacking.

■ No solace for the state is to be found in the general principle that in ruling upon the sufficiency of the evidence to sustain a judgment of conviction the facts in evidence and all favorable inferences to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. *State v. Chase*, 444 S.W.2d 398, 401 (Mo. banc 1969); and *State v. McGlathery*, 412 S.W.2d 445, 447 (Mo. 1967). Evidence to support the first element of the charged offense is simply nonexistent. Regarding the drawing of a permissible inference to support the first essential element, although possession of recently stolen property may be invoked to establish an inference that the possessor is the thief, *State v. Dobson*, 303 S.W.2d 650, 651 (Mo.1957), it may not be invoked to establish an inference that the possessor received the property from another, *State v. Armstrong*, supra, 555 S.W.2d at 643. In the instant case the state has nothing more than mere suspicion to rely upon in support of the essential element that the property was " 'received in some way' from another person". Deprivations of human liberty and extractions of penal fines must rest upon something more solid than mere suspicion. To hold otherwise would be tantamount to advancing speculation, conjecture and sheer surmise to the ranks of probative evidence.

By virtue of the record before this court it cannot be said that an evidentiary basis existed from which the jury could have found that defendant received the stolen property from another as opposed to stealing it himself. The state's case was fatally remiss in this respect and the judgment of conviction cannot stand.

■ Any inclination to remand this case for retrial on the supposition that sufficient evidence to fill the evidentiary void may be available to the state is effectively stifled by the recent decision of the Supreme Court of the United States in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). It was held in *Burks* that the policy of the Double Jeopardy Clause denies the prosecution under circumstances comparable to those at hand a "second bite at the apple". As therein stated, 98 S.Ct., at 2147, "[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding . . . [t]his is central to the objective of the prohibition against successive trials." The "binding" effect of *Burks* upon the courts of this state was recognized and enunciated in *State v. Basham*, 568 S.W.2d 518 (Mo. banc 1978).

Judgment reversed and defendant ordered discharged.

All concur.