**STATE of Missouri, Respondent,**

v.

**Travis Dwain BUE, Appellant.**

No. 74122.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 26, 1999.

Stephen Ray Porter, Monroe City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent.

CLIFFORD H. AHRENS, Judge

Defendant was charged by information with the class B felony of attempt to manufacture a controlled substance, section 195.211, RSMo 1994.[1] A jury found defendant guilty and assessed his punishment at imprisonment for a term of fifteen years. Defendant appeals the judgment on his conviction.[2] We reverse and remand.

Viewed in a light most favorable to the verdict, the evidence adduced at trial established the following facts. At 2:25 a.m. on May 18, 1997, Deputy Alan Barton observed a blue Datsun 280 ZX travelling northbound on Missouri Highway 151. Deputy Barton knew that defendant's license had been revoked. Deputy Barton recognized that the vehicle belonged to defendant and initiated a traffic stop of defendant's vehicle. Defen-

---

[1] All statutory references are to RSMo 1994 unless otherwise indicated.

[2] Defendant was also convicted of driving with a revoked license, section 302.321, for which he was sentenced to one year in the Shelby County jail. Defendant does not challenge this conviction on appeal.

dant exited the Datsun before Barton could approach. Defendant told Barton that his license was still revoked, at which time defendant was placed under arrest. Defendant also told Barton that "Kenny" was the passenger in the vehicle. Barton approached the vehicle from its rear passenger side. He shined his flashlight into the left rear passenger window of the vehicle and observed a brown paper sack which contained several cans of starting fluid or ether behind the driver's seat. Deputy Barton observed several more cans on the floorboard of the vehicle. Barton placed defendant and the passenger, Kenneth Little, in his patrol car and called Police Chief John Quinley. Deputy Barton drove his patrol car to meet Chief Quinley one-quarter of a mile from the scene of the traffic stop. Quinley then followed Deputy Barton to defendant's vehicle. Deputy Barton left defendant's vehicle unattended for three minutes. Quinley watched defendant and Little as Deputy Barton searched the Datsun. Barton seized eleven unopened cans of starting fluid, a bottle of pseudoephedrine and an unopened box of salt. Defendant and Little were then arrested for attempt to manufacture methamphetamine.

Later in the morning of May 18, the officers executed a search warrant on the residence of defendant and Jim Darling. The officers seized four lithium batteries and a bottle of pseudoephedrine. These are ingredients necessary to the manufacture of methamphetamine.

The officers also executed a search warrant on Little's residence later the same morning. The officers seized thirty-three empty bottles of ephedrine and pseudoephedrine in a box, two pipes, a set of scales and two film canisters. A pipe and a canister tested positive for the presence of marijuana.

Defendant filed a motion July 18, 1997 to suppress the evidence seized from his vehicle pursuant to the traffic stop and the evidence seized from the Darling and Little residences. The docket sheet reflects that the motion was denied on October 9, 1997.

■ We first address defendant's third point on appeal. Defendant argues, and the state concedes, that the trial court improperly instructed the jury on the definition of "attempt" in relation to the class B felony for which he was charged. Defendant did not file the jury instructions of which he complains with this court. It is defendant's responsibility to see that a complete record is filed. Rule 30.04(c); *State v. Creech,* 983 S.W.2d 169, 170–71 (MoApp.1998). However, the parties agree that defendant was charged, prosecuted and sentenced under section 195.211, a class B felony. They also agree that the jury found defendant guilty under the lesser burden of proof language in the definition of a class C felony attempt under section 564.011. The information under which defendant was charged provided that

defendant, in violation of Section 195.211, RSMo, committed the CLASS B FELONY OF AN ATTEMPT TO MANUFACTURE A CONTROLLED SUBSTANCE, punishable upon conviction under Sections [sic] 558.011.1(2), RSMo, in that on or about May 18, 1997, ... defendant knowingly gathered some of the necessary ingredients to manuacture [sic] methamphetamine, and such conduct was a substantial step toward the commission of the crime of manufacturing methamphetamine, and was done for the purpose of committing such crime of manufacture of methamphetamine, knowing or consciously disregarding a substantial and unjustifiable risk that it was a controlled substance.

■ Any person who manufactures a controlled substance or attempts to manufacture a controlled substance is guilty of the same crime, a class B felony. Section 195.211; *State v. Motley,* 976 S.W.2d 502, 504–05 (Mo. App.1998). Section 195.211 does not define the related attempt. This court has held that the term "attempt" as used in 195.211 bears the common law meaning and an instruction should be drafted accordingly. *Id.* The common law meaning of attempt requires the conduct of a defendant to "nearly approach the consummation" of that offense. *State v. Davis,* 982 S.W.2d 739, 741 (Mo.App. 1998). Section 564.011 creates a broader inchoate attempt offense with a lesser punishment than the common law offense of an attempt to manufacture under section

195.211. *State v. Reyes,* 862 S.W.2d 377, 386 (Mo.App.1993).

In *Reyes,* the jury convicted the defendant under the "substantial step" definition of attempt found in section 564.011, but recommended a sentence for violating section 195.211. *Id.* at 388. The trial court adopted the jury recommendation. *Id.* As the instruction overstated the maximum term of punishment, the *Reyes* court reversed the defendant's conviction. *Id.*

■■■ In this case, the charge of attempt to manufacture a controlled substance under the common law definition in section 195.211, a class B felony, is punishable by a term of imprisonment not less than five years but not to exceed fifteen years. Section 558.011.1(2). Under section 564.011, attempt to manufacture a controlled substance under the substantial step definition, a class C felony, is punishable by a term of imprisonment not to exceed seven years. Section 558.011.1(3). As in *Reyes,* the sentencing was not removed from the jury. *Cf. Motley,* at 506; *Davis,* at 742. Defendant's right to a correct instruction was infringed by the trial court's overstatement of the maximum term of defendant's imprisonment. *See Reyes,* 862 S.W.2d at 388; *State v. Cline,* 808 S.W.2d 822, 827 (Mo. banc 1991). In cases where the jury assesses punishment above the limit prescribed by law for an offense, Rule 29.04 permits the trial court to pronounce a sentence and render judgment within the statutory limits. However, Rule 29.04 does not authorize the trial court to amend the punishment declared by a jury where the jury has been misdirected on that issue. *Cline,* 808 S.W.2d at 827. The judgment convicting defendant of the offense of attempt to manufacture a controlled substance is reversed and remanded.

■■■ Although our determination of point three is dispositive, in the interest of judicial economy, we will address the other points raised by defendant on appeal. In his first point on appeal, defendant asserts that the trial court abused its discretion in admitting

evidence seized from defendant's car. Defendant claims that the search of his automobile and the seizure of eleven cans of starting fluid, one bottle of pseudoephedrine tablets and one container of iodized salt were unlawful. We disagree.

■■■ The Fourth Amendment is not offended when a police officer stops a moving vehicle to investigate if the officer has a reasonable suspicion, based upon specific and articulable facts, that the passengers of the vehicle are involved in criminal activity. *State v. Duncan,* 879 S.W.2d 749, 751 (Mo. App.1994). Reasonable suspicion is dependent upon the totality of the circumstances. *Id.* A police officer may stop a vehicle for investigative purposes even though no probable cause to arrest exists. *State v. White,* 835 S.W.2d 942, 953 (Mo.App.1992). In this case, Deputy Barton had a reasonable suspicion to believe that defendant was driving the vehicle without a license. Barton positively identified the blue 1984 Datsun as a "vehicle owned and driven by [defendant]." Deputy Barton had knowledge that defendant's driving privileges had been revoked. Prior to the traffic stop, he had observed defendant driving without a valid license. It was reasonable for Barton to conclude in light of this knowledge that defendant was driving while his license was revoked. Accordingly, Deputy Barton was entitled to make a brief stop of the vehicle to investigate his suspicions. *Duncan,* 879 S.W.2d at 751; *see also United States v. Robinson,* 414 U.S. 218, 220, 94 S.Ct. 467, 469–470, 38 L.Ed.2d 427 (1973).[3]

■■■ After Barton made the lawful traffic stop, he positively identified defendant as he exited from the driver's side of the Datsun. Defendant then confirmed that he was driving while his license was revoked. Probable cause to arrest exists when the arresting officer's knowledge of the facts and circumstances is sufficient to warrant a prudent person's belief that the suspect is committing or has committed an offense. *White,* 835

---

**3.** Contrary to defendant's assertion, *State v. Hulse,* 774 S.W.2d 556 (Mo.App.1989), does not reach the issue of whether a police officer may make a lawful traffic stop under these facts. In

that case, none of the evidence gained through the traffic stop was used to convict the defendant. *Id.* at 557.

S.W.2d at 953. Under these facts, defendant was lawfully placed under arrest.

■■■ Although defendant does not raise the issue, we will consider the impact of the recent United States Supreme Court decision in *Knowles v. Iowa*, —— U.S. ——, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) on this case. Rule 30.20. In *Knowles*, the defendant's car was searched after a police officer issued the defendant a traffic citation for speeding.[4] The Supreme Court held that the search fell under neither of the rationales for the "search incident to arrest" exception to the Fourth Amendment: (1) the need to disarm the suspect in order to take him into custody or (2) the need to preserve evidence for later use at trial. 119 S.Ct. at 487–88 (*citing Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427). First, the Supreme Court noted that the threat to officer safety from issuing a traffic citation is a good deal less than in the case of a custodial arrest. *Id.* A traffic stop is a brief encounter and is more analogous to a *"Terry* stop."[5] While there is a concern for officer safety in this context, "it does not by itself justify the often considerably greater intrusion attending a full field-type search." *Id.* Further, the Supreme Court posited that once a suspect is stopped and issued a citation, "all the evidence necessary to prosecute that offense [has] been obtained." *Id.* 119 S.Ct. at 488.

■■■ Among the established exceptions to the search warrant requirement of the Fourth Amendment left undisturbed by *Knowles* are the search incident to arrest and the automobile exception. When an officer has made a lawful custodial arrest of the occupant of an automobile, "he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *White*, 835 S.W.2d at 954 (*citing New York v. Belton*, 453 U.S. 454, 460,

101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981)). In this case, Deputy Barton did not conduct a search of the automobile until after defendant's arrest. The transportation of defendant one-quarter of a mile from the traffic stop for three minutes does not offend this exception. In any event, law enforcement personnel may search an automobile on the highways pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990)(*citing Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). We find that the facts and circumstances within the knowledge of Deputy Barton were sufficient in themselves to allow a man of reasonable caution to believe that the contents of defendant's vehicle offended the law and exigent circumstances necessitated the search. *See id; State v. Ritter*, 809 S.W.2d 175, 177 (Mo.App.1991). Deputy Barton was aware that defendant had been linked to drug activities. The late hour at which defendant was stopped and the abundance of cans of starting fluid in defendant's vehicle were also factors pointing to probable cause. *Burkhardt*, 795 S.W.2d at 405; *State v. Collins*, 816 S.W.2d 257 (Mo.App.1991). The trial court properly denied defendant's motion to suppress the evidence discovered in defendant's vehicle. Point denied.

■■■ In his second point on appeal, defendant asserts that the trial court plainly erred in admitting evidence from the residences of Darling and Little because "the affidavits were insufficient to establish probable cause that contraband would be found at the residences." Defendant did not include this claim of error in his motion for new trial. This claim is reviewable, if at all, only for plain error. Rule 30.20; *State v. Sielfleisch*, 884 S.W.2d 422, 429 (Mo.App.1994). The

---

**4.** By way of explanation, the Supreme Court stated that

> Iowa law ... authorizes the ... practice of issuing a citation in lieu of arrest or in lieu of continued custody after an initial arrest. *See* Iowa Code Ann. [section] 805.1(1) (West Supp. 1997). [footnote omitted]. Section 805.1(4) provides that the issuance of a citation in lieu of an arrest "does not affect the officer's authority to conduct an otherwise lawful search." The Iowa Supreme Court has interpreted this

> provision as providing authority to officers to conduct a full-blown search of an automobile and driver in those cases where police elect not to make a custodial arrest and instead issue a citation – that is, a search incident to citation.

*Knowles*, 119 S.Ct. at 486–87.

**5.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

error complained of must impact so substantially upon the defendant's rights that manifest injustice or a miscarriage of justice will result if left uncorrected. *Sielfleisch*, 884 S.W.2d at 429.

The Fourth Amendment guarantees that "no warrant shall issue but upon probable cause." The Missouri constitution provides "essentially the same protections found" in the Fourth Amendment. *State v. Sweeney*, 701 S.W.2d 420, 425 n. 4 (Mo. banc 1985); *see* Mo. Const. art. 1, section 15. To effectuate these constitutional mandates, a neutral magistrate, after assessing the totality of the circumstances including the veracity and basis of knowledge of the persons supplying hearsay information, must determine whether a search warrant application and its supporting affidavits demonstrate a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Hammett*, 784 S.W.2d 293, 295 (Mo. App.1989). Our duty, upon review, is to ensure that the magistrate had a substantial basis for concluding probable cause existed. *State v. Hill*, 929 S.W.2d 258, 262 (Mo.App. 1996). We examine the four corners of the supporting affidavits when making this determination. *Id.* We give great deference to the magistrate's decision. *Id.*

The search warrant issued for the Darling residence was supported by two affidavits. Deputy Barton recited that he had "received information from confidential reliable informants about drug activities involving [defendant], Kenny Little, and others at the ... Jim Darling residence where [defendant] has been seen and is believed to be living." Deputy Barton had previously observed defendant's vehicle at the Darling residence. Barton personally observed items used to produce methamphetamine in defendant's vehicle on May 18.

Deputy Barton corroborated the information from his informants. Furthermore, "tips by informants found to be reliable in the past are sufficient information alone to support an issuing judge's finding of probable cause." *State v. Vega*, 875 S.W.2d 216, 218 (Mo.App.1994). Defendant contests other statements found in the affidavits supporting the search warrant for the Darling

residence. However, even if the affidavits are stripped of these statements, the affidavits were sufficient to support a substantial basis for the magistrate to conclude that probable cause existed. *State v. Laws*, 801 S.W.2d 68, 71 (Mo. banc 1990).

The search warrant issued for the Little residence was supported by Barton's affidavit in which he recited that a reliable confidential informant told Deputy Barton that the Little residence was involved in drug activity, including the sale and manufacture of controlled substances. Officer Buckman recited that he had conducted surveillance on the Little residence and on occasion defendant stayed for "several days" at the Little residence. Additionally, Buckman observed "[defendant], Jim Darling and others come and go from the Little residence in the early morning hours."

The surveillance of Little's residence corroborated the information provided by Deputy Barton's informants. "[T]ips by informants found to be reliable in the past are sufficient information alone to support an issuing judge's finding of probable cause." *Vega*, 875 S.W.2d at 218. Although no drugs were actually observed during Buckman's surveillance of the Little residence, we have held that "it is only necessary to show a 'fair probability' that contraband will be found." *Id.*

Defendant also raises an argument bottomed on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), when he asserts that the affidavit of Officer Buckman contained false statements. The statement at issue concerns Buckman's recital that he had served a warrant on the Little residence in 1996. In fact, Buckman did not serve that warrant, but had been aware of it. Defendant's motion to suppress merely alleges that the Darling and Little residences were searched "without lawful authority in that the facts contained in the affidavits for the search warrants for these two residences lacked sufficient corroboration, using the totality of the circumstances approach, to have justified the issuance of said warrants." To raise a claim under *Franks*,

[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Laws,* 801 S.W.2d at 71. The motion failed to state a claim cognizable under *Franks.* Even had defendant made a cognizable motion, sufficient content could be found in the affidavits to support a finding of probable cause. *See Franks,* 438 U.S. at 171–172, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

After reviewing the totality of the circumstances, we find that the magistrate had a substantial basis to conclude probable cause to support the issuance of the warrants for the Darling and Little residences existed. Defendant suffered no manifest injustice from the issuance of the warrants. Point denied.

The judgment convicting defendant of the offense of an attempt to manufacture a controlled substance is reversed and remanded for proceedings in accordance with this opinion.

JAMES A. PUDLOWSKI, P.J. and WILLIAM H. CRANDALL Jr., J., concur.